UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF PUERTO RICO

Eduardo Hidalgo-Vélez, et al.,
      Plaintiffs

      v.                                  Case No. 11-cv-02175-SJM

San Juan Asset Management,
Inc., et al.,
      Defendants


**O R D E R**

The plaintiffs brought suit against the defendants in the
Commonwealth of Puerto Rico's Court of First Instance on behalf
of themselves and a class consisting of those who had invested in
the Puerto Rico & Global Income Target Maturity Fund Inc. (the
"Fund").  Plaintiffs asserted various claims under Puerto Rico
law based on fraudulent disclosures in, and omissions from, a
prospectus on which they relied in purchasing shares of the Fund.
On December 7, 2011, Defendant PricewaterhouseCoopers LLP ("PwC")
removed the case to the United States District Court for the
District of Puerto Rico pursuant to the Securities Litigation
Uniform Standards Act, 15 U.S.C. §§ 78bb, et seq. ("SLUSA").

Plaintiffs filed a motion to remand the case to the Court of
First Instance, but that motion was denied.  Defendants then
moved to dismiss the action on numerous grounds, including the
application of SLUSA.  Plaintiffs did not oppose the motions to
dismiss, but instead moved to certify the order denying their

motion to remand for interlocutory appeal and sought a stay pending appeal.  PwC objects to that motion.[1]

## Background

The Fund is registered as a non-diversified investment company under the Puerto Rico Investment Company Act, 10 Puerto Rico Laws Annotated §§ 661, et seq.  Plaintiffs allege that they invested in the Fund based on the representations contained in the prospectus.

The prospectus provided that the Fund would invest in various categories of securities, such as preferred stock and debt securities of corporations, partnerships, trusts, or other similar issuers; securities issued by investment companies registered under the Investment Companies Act of 1940, 15 U.S.C. §§ 80a-1, et seq.; and notes issued by financial institutions with equally weighted exposure to both European and American investment-grade bond indices that are tied to certain publicly traded securities.  The prospectus also provided that the Fund would invest at least seventy-five percent of its assets in certain fixed or variable income securities from issuers outside of Puerto Rico (the "75% standard").  The prospectus prohibited

--------

[1]  The case was reassigned to the undersigned judge on October 1, 2012.

2

the Fund from investing more than twenty-five percent of its assets in securities of a single issuer (the "25% standard").

Plaintiffs allege that the defendants violated the investment principles contained in the prospectus and "induced the Plaintiffs . . . to invest in the Fund" through "false and erroneous statements and substantial omissions."  Compl. ¶ 77. Specifically, plaintiffs allege that the Fund failed to invest in certain highly specialized notes issued by Banco-Bilbao Vizcaya Argentaria, S.A., which was "[t]he reason for the existence of the Fund."  Compl. ¶ 71.  They also allege that the Fund made investments in certain Lehman Brothers notes (the "Lehman Notes") that represented a significant concentration in a single issuer outside of Puerto Rico, in violation of both the 75% standard and the 25% standard.  The Fund experienced a significant loss in market value beginning in 2008, in part due to the decrease in value of the Lehman Notes.

On October 28, 2011, plaintiffs filed a class action and derivative suit based on those allegations in the Commonwealth of Puerto Rico Court of First Instance, Superior Part of San Juan, against numerous defendants, including: the Fund itself; Amaury Luis Rivera, Pedro Rivera Casiano, and Eyck Lugo-Rivera, individual directors of the Fund (the "individual directors");[2]

---

[2]  Plaintiffs also sued Félix González, another director of the Fund.  As discussed below, González did not enter an appearance in this action.

San Juan Asset Management, Inc. ("SJAM"), the Fund's investment
adviser; José Vizcarrondo Ramérez de Arellano,[3] the Secretary of
the Fund and President of the Investment Adviser; BBVA Securities
Puerto Rico, Inc. ("BBVA Securities"), the Fund's sales agent;
Rafael Colón-Ascar, President of both the Fund and BBVA
Securities; PwC, the Fund's outside auditor; and various John
Does and unnamed companies.  PwC removed the case to federal
court on December 7, 2011, pursuant to the removal provisions of
SLUSA.[4]  As noted earlier, a motion to remand was denied by
order, dated September 24, 2012 (Cerezo, J.) (the "September 24
order").


## Discussion

The defendants move to dismiss all claims.  Plaintiffs have
not opposed the motions to dismiss, but instead move for
interlocutory appeal of the September 24 order under the
provisions of 28 U.S.C. § 1292(b).[5]  PwC objects.

---

[3]  In their complaint, plaintiffs alternatively refer to
this defendant as "Vizcarrondo Ramérez de Arellano" and
"Vizcarrondo Ramirez de Arellano."  In his motion to dismiss, the
defendant refers to himself as "José A. Vizcarrondo."  The court
will refer to the defendant as "Vizcarrondo."

[4]  BBVA Securities joined PwC's notice of removal.

[5]  Although plaintiffs move to certify the order for
interlocutory appeal, the background section of the motion
suggests that they also move for reconsideration.  See Mot. for
Cert. (document no. 77) at 3 ("With the utmost respect we submit
that this Court must humbly accept that it does not have

I.   <u>Interlocutory Appeal</u>

"Interlocutory appeals under § 1292(b) require an order (1) 'involv[ing] a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) for which 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" <u>Caraballo-Seda v. Municipality of Hormigueros</u>, 395 F.3d 7, 9 (1st Cir. 2005) (quoting § 1292(b)).  The court of appeals has "repeatedly emphasized that 'interlocutory certification under 28 U.S.C. § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.'"  <u>Id</u>. (quoting <u>Palandjian v. Pahlavi</u>, 782 F.2d 313, 314 (1st Cir. 1986)).  Thus, "the instances where section 1292(b) may appropriately be utilized will, realistically, be few and far between."  <u>In re San Juan Dupont Plaza Hotel Fire Litig.</u>, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988); <u>see also</u> <u>Camacho v. P.R. Ports Auth.</u>, 369 F.3d 570, 573 (1st Cir. 2004) ("appeals under [§ 1292(b)] are, accordingly,

---

jurisdiction to entertain further this case and must . . . remand this action to . . . where it was originally brought and where it properly belongs.").  Assuming that the plaintiffs alternatively move for reconsideration, they have not shown "an 'intervening change' in the controlling law, a clear legal error, or newly-discovered evidence."  <u>Soto-Padró v. Pub. Bldgs. Auth.</u>, 675 F.3d 1, 9 (1st Cir. 2012); <u>see also</u> <u>Latin Am. Music Co. v. ASCAP</u>, 642 F.3d 87, 91 (1st Cir. 2011).

hen's-teeth rare").  "The party seeking such appellate review has
the burden of convincing . . . the district court . . . that the
motion satisfies the three factors under section 1292(b)."  <u>Colón
v. Blades</u>, 2009 WL 3347627, at *5 (D.P.R. Oct. 14, 2009)
(internal quotation marks and citations omitted).

     In her September 24 order, Judge Cerezo held that SLUSA
applied to the case and, therefore, removal to federal court was
proper.  As the court noted, "[r]emoval is proper under SLUSA
when the suit: (1) is a covered class action, (2) based on state
statutory or common law that (3) alleges that defendants made a
misrepresentation or omission of a material fact or used or
employed any manipulative device or contrivance in connection
with the purchase or sale of a covered security."  September 24
order at 2 (internal quotation marks and citation omitted); <u>see
also</u> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit</u>, 547
U.S. 71, 82-83 (2006).  The court held that all three prongs were
met.

     In support of their motion for an interlocutory appeal,
plaintiffs argue that the court erred in finding that the third
prong necessary for removal was present, because that prong
requires that the Fund's common stock be a covered security,
which it is not.[6]  PwC agrees that the Fund's stock does not

_____

     [6]  Under SLUSA, a covered security is any security "(A)
listed, or authorized for listing, on the New York Stock
Exchange[,] . . . the American Stock Exchange, or . . . the

qualify as a covered security, but argues that the court correctly held that "SLUSA applies to cases brought by investors of a fund that invests, or represents that it will invest, in a covered security, even when the shares of the fund in which the class invested are not covered securities."  September 24 order at 4.  Pwc argues, as the court held, that because the Fund's prospectus listed various covered securities as anticipated investments, and because the Fund actually held covered securities, the third prong for SLUSA removal was met.

   A.   Controlling Question of Law

   A controlling question of law under § 1292(b) "is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources."  Feinman v. FBI, 2010 WL 962188, at *1 (D.D.C. Mar. 15, 2010); see also Skinner v. Salem School Dist., 718 F. Supp. 2d 186, 194 (D.N.H. 2010).  PwC

---

National Market System of the NASDAQ Stock Market (or any successor to such entities; (B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or (C) a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B)."  15 U.S.C. § 77r(b)(1).  A covered security also includes any security issued by an investment company that is registered under the Investment Company Act of 1940.  Id. at (b)(2).

does not dispute that the court's order involved a controlling question of law. Had the court interpreted SLUSA to require that the common stock of the Fund itself be a covered security, then the case would have been remanded to the Commonwealth court and the federal court litigation would have been terminated. <u>See</u> <u>United States v. Lahey Clinic Hosp., Inc.</u>, 399 F.3d 1, 7 (1st Cir. 2005) (questions concerning whether a court has subject matter jurisdiction are controlling questions of law for § 1292(b) purposes). In addition, as discussed below, if removal was proper and SLUSA applies, as the court has held, then the case will be dismissed, making that determination a "controlling question of law." Therefore, the first prong necessary for interlocutory appeal is met.[7]

B.   <u>Substantial Ground for Difference of Opinion</u>

"Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first

---

[7]   Although the parties formulate the question of law at issue in the September 24 order differently, the controlling question is whether the "covered security" prong of SLUSA is met where a defendant allegedly makes material misrepresentations or omissions in connection with a fund's investments in covered securities, even when the fund's stock itself is not a covered security.

8

impression are presented.'" <u>Couch v. Telescope Inc.</u>, 611 F.3d
629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers
Edition § 3:212 (2010)).  When numerous other courts "have
arrived at a similar holding regarding" the question of law,
however, "no substantial ground for difference of opinion
exists." <u>Caraballo-Seda</u>, 395 F.3d at 9 (internal quotation marks
and citation omitted).  "[T]he touchstone of the 'substantial
ground' prong is the likelihood of success on appeal." <u>United
States ex rel. LaValley v. First Nat'l Bank of Bos.</u>, 1990 WL
112285, at *5 (D. Mass. July 30, 1990).  Thus, for there to be a
substantial ground for difference of opinion, "there must be
'substantial doubt' that the district court's order was correct."
<u>N.F.L. Ins. Ltd. v. B&B Holdings, Inc.</u>, 1993 WL 255101, at *2
(S.D.N.Y. July 1, 1993) (quoting S. Rep. No. 85-2434, at 3
(1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5257).

SLUSA provides that no covered class action based on state
law may be maintained in a federal court by a private party
alleging "a misrepresentation or omission of a material fact <u>in
connection with</u> the purchase or sale of a covered security."
§ 78bb(f)(1) (emphasis added).  The Supreme Court noted that
Congress intended the phrase "in connection with" to mean the
same thing in SLUSA as it does in § 10(b) of the Securities
Exchange Act of 1934. <u>Dabit</u>, 547 U.S. at 85.  Therefore, the
Supreme Court held that the phrase should be interpreted broadly

9

and "it is enough that the fraud alleged 'coincide' with a securities transaction." Id.

Plaintiffs argue that a substantial ground for a difference of opinion exists as to whether the "in connection with" standard requires that shares purchased by the plaintiffs be covered securities.  In support, they cite a single case: Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., 750 F. Supp. 2d 450 (S.D.N.Y. 2010).  There, the court held that SLUSA did not apply where the plaintiffs purchased shares, which were not covered securities, in hedge funds that maintained portfolios that included covered securities.  Id. at 455.  The court reasoned that "[t]o hold otherwise would extend the reach of SLUSA to any investment vehicle with covered securities in its portfolio." Id.  Plaintiffs analogize the Fund to a hedge fund and argue that under Montreal Pension, SLUSA would not apply to this case.

In Montreal Pension, the court held that the plaintiffs' claims were not preempted by SLUSA because the alleged misrepresentations were made in connection with the valuation of certain hedge funds, rather than in connection with the sale or purchase of covered securities within the hedge fund portfolios. 750 F. Supp. 2d at 454-55.  The court noted that SLUSA does not apply to alleged frauds which relate to hedge funds just because the funds' portfolios happen to hold covered securities.  See id.

10

at 455.  The court appeared to acknowledge, however, that SLUSA could apply to funds which held covered securities when the covered securities were "at the heart" of the case.  Id.  After Montreal Pension was decided, the Second Circuit held that plaintiffs need not necessarily purchase or sell covered securities for SLUSA to apply, so long as the purchase or sale of covered securities is an integral part of "the misconduct complained of[] and the harm incurred."  Romano v. Kazacos, 609 F.3d 512, 524 (2d Cir. 2010); see also Backus v. Conn. Comm. Bank, N.A., 789 F. Supp. 2d 292, 307 (D. Conn. 2011) ("By misleading Plaintiffs into believing that it would safeguard their assets, WNB induced Plaintiffs to invest their assets with BLMIS, which purported to buy and sell covered securities with those assets but was in fact stealing them.  BLMIS' buying and selling of covered securities is one of a string of events that were all intertwined.") (internal quotation marks and citation omitted); In re Kingate Mgmt. Ltd. Litig., 2011 WL 1362106, at *8-*9 (S.D.N.Y. Mar. 30, 2011).

    In this case, the court noted in its September 24 order that the "[p]laintiffs do not deny having alleged in their complaint that defendants misrepresented and omitted material information about the Fund's investment objectives, level of diversification and anticipated investments."  September 24 order at 3.  The court further noted that these misrepresentations related to

"various covered securities." <u>Id</u>. at 4.  Plaintiffs do not
contest the court's holding in that regard, nor do they argue
that the defendants' alleged misrepresentations did not
sufficiently "coincide" with covered securities.  Nor do the
plaintiffs deny that the Fund actually purchased and held various
covered securities, the decline in value of which contributed to
their claim for damages.  Their only argument is that SLUSA does
not apply because the Fund's common stock is not itself a covered
security.  As discussed, <u>Montreal Pension</u> does not support that
principle.

Even if <u>Montreal Pension</u> lent some support to the
plaintiffs' view, one potentially conflicting opinion does not
create a "substantial ground for a difference of opinion" for
purposes of § 1292(b).  <u>See</u> <u>Head v. Farm Bureau Gen. Ins. Co. of
Mich.</u>, 2005 WL 2173568, at *5 n.1 (E.D. Mich. Sept. 6, 2005)
("the Court does not believe that one case . . . satisfies the
requirement that there be 'substantial grounds' for a difference
of opinion"); <u>Oyster v. Johns-Manville Corp.</u>, 568 F. Supp. 83, 88
(D.C. Pa. 1983) ("[a] single case demonstrates that while there
may be grounds for differences of opinion, they are not, however,
<u>substantial</u>"); <u>see also</u> <u>Pac. Emp'rs Ins. Co. v. Global
Reinsurance Corp. of Am.</u>, 2010 WL 2376131, at *9 (E.D. Pa. June
9, 2010); <u>SPL Shipping Ltd. v. Gujarat Cheminex Ltd.</u>, 2007 WL
1119753, at *2 (S.D.N.Y. Apr. 12, 2007); <u>Yeager's Fuel, Inc. v.</u>

Penn. Power & Light Co., 162 F.R.D. 482, 489 (E.D. Pa. 1995).
Therefore, Montreal Pension alone, if, indeed, it were contrary
to the decision here, does not establish the substantial ground
for difference of opinion prong of § 1292(b).

     In determining whether an interlocutory appeal is warranted,
the critical issue is whether there is a substantial ground for a
difference of opinion with respect to issues of law raised by the
parties; it is not whether the plaintiffs disagree with the
court's ruling.  See Couch, 611 F.3d at 633 ("a party's strong
disagreement with the Court's ruling is not sufficient for there
to be a 'substantial ground for difference'"); Am. Soc. for
Prevention of Cruelty to Animals v. Ringling Bros. and Barnum &
Bailey Circus, 246 F.R.D. 39, 43 (D.D.C. 2007).  While plaintiffs
disagree with the court's decision, they have not pointed to any
authority suggesting that there is a substantial difference among
the courts with respect to resolution of any issue addressed in
the September 24 order.  Therefore, they have not shown that a
substantial ground for a difference of opinion exists.


     C.   Materially Advance Termination of Litigation

     Even if a substantial ground for a difference of opinion
existed, certification of an interlocutory appeal would not
materially advance the termination of the litigation.  "Whether
interlocutory review of this question would materially advance

the resolution of this case depends in large part on considerations of judicial economy and the need to avoid unnecessary delay and expense and piecemeal litigation." <u>Coast Fed. Bank, FSB v. United States</u>, 49 Fed. Cl. 11, 14 (Fed. Cl. 2001) (internal quotation marks and citation omitted); <u>see also In re Watson</u>, 309 B.R. 652, 660 (1st Cir. BAP 2004) (analyzing appeal under 28 U.S.C. § 158(a)(3) under the 1292(b) standard and noting that an "interlocutory appeal materially advances the ultimate termination of the litigation where resolution of the issue on appeal 'greatly assist[s]' in resolving the underlying matter, and does not unnecessarily delay resolution of the underlying matter"). "Even when there is a right of interlocutory appeal, a party can wait [until] the case is over and then appeal, bringing before [the Court of Appeals] all nonmoot interlocutory rulings adverse to him." <u>Pearson v. Ramos</u>, 237 F.3d 881, 883 (7th Cir. 2001).

Here, the applicability of SLUSA mandates the exercise of federal jurisdiction and, as plaintiffs concede, and as discussed below, application of SLUSA requires dismissal of the action. Therefore, an interlocutory appeal would neither serve the interests of judicial economy nor avoid delay, as the plaintiffs may immediately appeal from the dismissal of the case. In addition, given the unlikelihood of success on appeal, "certification of an interlocutory appeal seems more likely to

14

delay the ultimate resolution of this case than to materially advance it."   See Skinner, 718 F. Supp. 2d at 194.

Plaintiffs have not met their "heavy burden of convincing the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." United Air Lines, Inc. v. Gregory, 716 F. Supp. 2d 79, 89 (D. Mass. 2010) (internal citations omitted). Accordingly, plaintiffs' motion to certify the September 24 order for interlocutory appeal is denied.


II.   Motion to Dismiss

The defendants filed numerous motions to dismiss the complaint prior to the September 24 order.[8]  The motions asserted various grounds for dismissal, including the applicability of SLUSA.  Plaintiffs did not respond to any of the motions to dismiss.  Certain defendants filed motions requesting that their motions to dismiss be deemed unopposed and granted.[9]  Plaintiffs did not respond to those motions.[10]

---

[8]  The motions to dismiss were filed by PwC (document no. 40), Colón-Ascar (document no. 43), the independent directors (document no. 45), SJAM and Vizcarrondo (document no. 47), and BBVA Securities (document no. 48).

[9]  These motions were filed by Colón-Ascar (document no. 57), BBVA Securities(document no. 58) the independent directors (document no. 59), and PwC (document no. 60).

[10]  While the motion to remand was pending, plaintiffs filed notices of voluntary dismissal as to their claims against BBVA

After the court issued its September 24 order and the case was reassigned, PwC and the independent directors renewed their motions to dismiss, focusing primarily on the court's holding that SLUSA is applicable to the case.  Plaintiffs again did not respond, but instead filed the motion for certification of an interlocutory appeal.

"If removal is proper under SLUSA's general removal provision, any state-law claims must be dismissed . . . ." Weitman v. Tutor, 588 F. Supp. 2d 133, 137 (D. Mass. 2008); see also § 78bb(f)(1).  Indeed, "[o]nce a SLUSA-covered action is removed and a plaintiff moves to remand, a motion to dismiss [based on SLUSA] becomes unnecessary."  Atkinson v. Morgan Asset Mgmt., Inc., 658 F.3d 549, 556 (6th Cir. 2011).

As mentioned, plaintiffs did not oppose the defendants' motions to dismiss or subsequent filings concerning those motions.  The plaintiffs also concede in their motion for

------

Securities and judgment was entered dismissing the action against BBVA Securities without prejudice.  The complaint, however, states that the suit is brought "on behalf of all those shareholders in a similar situation and derivatively on behalf of" the Fund.  Neither the Fund nor the additional shareholders voluntarily dismissed the action against BBVA Securities. Because a class has not been certified, however, the plaintiffs may voluntarily dismiss the action without providing class members with notice of the dismissal and an opportunity to be heard.  See In re Genzyme Corp. S'holder Litig., 2011 WL 4572540, at *1 n.2 (D. Mass. Sept. 1, 2011); Fed. R. Civ. P. 41.  To the extent the Fund, as a derivative plaintiff, did not join in the notices of voluntary dismissal, BBVA Securities' motion to dismiss is granted for the reasons discussed below.

certification that the applicability of "SLUSA mandates the
dismissal of this action."[11]  Because SLUSA does apply to this
action,[12] the case is dismissed.

## Conclusion

For the foregoing reasons, plaintiffs' motion for
certification of the court's September 24, 2012, order for
interlocutory appeal (document no. 77) is denied.  The
defendants' motions to dismiss (document nos. 40, 43, 45, 47, and
48) are granted.  The case is dismissed as to all defendants.
All other pending motions are terminated as moot.  The clerk of
court shall enter judgment accordingly and close the case.

---

[11]  Although neither the Fund nor González (who did not file
an appearance) moved to dismiss, still, "this action will be
dismissed as to all defendants because the ground for dismissal
applies equally to all defendants."  Smalley v. Shapiro & Burson,
LLP, 2012 WL 253986, at *1 (D. Md. Jan. 26, 2012); see also
Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994).

[12]  As the court stated in its September 24 order, "SLUSA
precludes actions; not just claims."  September 24 order at 5.
Plaintiffs do not suggest that any claim survives dismissal under
SLUSA.  See Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44
(1st Cir. 2010) ("judges are not obligated to do a party's work
for him, 'searching sua sponte for issues that may be lurking
in the penumbra of the motion papers'") (quoting United States v.
Slade, 980 F.2d 27, 31 (1st Cir. 1992)); United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge
(Sitting by Designation)

March 15, 2013

cc:  Jorge M. Izquierdo-San-Miguel, Esq.
     Eric Perez-Ochoa, Esq.
     Mauricio O. Muniz-Luciano, Esq.
     Salvador J. Antonetti-Stutts, Esq.
     Vanessa Badillo-Abasolo, Esq.
     Francisco G. Bruno-Rovira, Esq.
     Alicia L. Chang, Esq.
     Michael S. Flynn, Esq.
     Leslie Y. Flores-Rodriguez, Esq.
     Sara L. Velez-Santiago, Esq.
     Oreste R. Ramos-Pruetzel, Esq.
     Carlos A. Rodriguez-Vidal, Esq.
     Anette Cortes-Arcelay, Esq.
     Jaime E. Toro-Monserrate, Esq.
     Linette Figueroa-Torres, Esq.